**UNITED STATES of America**

v.

**James F. BOLDEN.**

Crim. No. 638–72.

United States District Court,
District of Columbia.

Oct. 27, 1977.

See also 514 F.2d 1301, 169 U.S.App. D.C. 60.

John H. Korns, Asst. U. S. Atty., Washington, D. C., for plaintiff.

James F. Bolden, pro se.

## MEMORANDUM OPINION

JUNE L. GREEN, District Judge.

Defendant James F. Bolden has moved, pursuant to 28 U.S.C. § 2255, to vacate or correct the sentence imposed on him by this Court on the grounds that he was denied effective assistance of counsel.

### I.

Mr. Bolden was indicted on March 30, 1972, on a number of charges arising out of the robbery of a Safeway store during which the security guard was fatally shot. In January of 1973, following a jury trial before this Court, defendant was convicted of first degree (felony) murder, robbery and carrying a dangerous weapon. On these three counts he was sentenced respectively

---

9. Wessinger's deposition.

to twenty years to life, five to fifteen years and three to ten years, concurrently. In July, 1975, the Court of Appeals affirmed the convictions for robbery and carrying a dangerous weapon, but reversed the conviction for felony murder because of the Court's response to a question submitted by the jury during deliberations. The Court of Appeals remanded for a new trial on that charge. On October 14, 1975, a second trial began before this Court on the felony murder charge, but it ended in a mistrial. The Court then set December 14, 1975, as the date for the third trial. On December 18, 1975, defendant entered a plea to second degree murder before this Court. The facts regarding the Court's discretion to impose the maximum sentence on Mr. Bolden were elaborated on the record at the plea hearing. Attorneys for Mr. Bolden's co-defendant first made the following representations:

MR. HURLEY: As the Court knows, we have had many, many discussions with the defendants before the Court. I can speak only as to Mr. Jones and many conferences with the Government.

After a series of more recent conferences, the Government has offered to Mr. Jones to dispose of this case a plea to the charge of murder in the second degree.

Now the Government's position as stated on the record by Mr. Hanny this morning is that they still reserve the right to allocute at the time of sentencing, and as of that time they are not going to recommend a specific sentence to the Court.

It is my understanding that they will recommend to the Court that the Court impose a substantial and meaningful sentence.

What allocution in addition to that the Government will provide I am unaware of at this time.

MR. GARBER: . . . [Mr. Jones] has been told that whatever the Government recommends, whatever the Government says, the matter of sentence would be strictly up to the Court.

THE COURT: That is correct.

MR. GARBER: And that he could receive a sentence up to life imprisonment, but not less than twenty years.

We have explained to him how that works, that if he was sentenced to imprisonment for life, in the maximum, the minimum could not exceed fifteen years, and the Court could impose any number of years less than that.

However, the maximum sentence would have to be at least twenty years, and we have given him various examples of how the sentence could be framed.

But we are satisfied that he understands it.

Subsequently the defendant Bolden was sworn and the following statements were made by Mr. Armstrong, one of his counsel, and by the defendant.

MR. ARMSTRONG: Inasmuch as Mr. Bolden and I and Mrs. McIntyre were all present in the courtroom, and in fact standing right here most of the time, I see no need to repeat the representations that Mr. Hurley and Mr. Garber have made.

I would adopt them with respect to Mr. Bolden, too.

THE COURT: Have any promises of any kind been made to induce your plea of guilty except that the first count of the indictment would be dismissed at the time of imposition of sentence and the previous conviction of armed robbery would be resentenced?

MR. BOLDEN: No.

THE COURT: Has your guilty plea been induced by any promises or representation by anyone as to what sentence will be imposed by the Court?

MR. BOLDEN: No, Your Honor.

THE COURT: Do you understand that as a result of your plea of guilty you may be sentenced to up to life imprisonment?

MR. BOLDEN: Yes, I do, Your Honor.

On February 2, 1976, this Court sentenced Mr. Bolden to a term of 15 years to life on the second degree murder count and imposed lesser sentences on two related counts, to run concurrently. Following the imposition of sentence, defendant raised no objection.

Later the same day, Mr. Bolden addressed a letter to this Court, apparently for the purpose of asking the Court's understanding should any other matters in connection with his prison term come up before it. In his own handwriting, he made the following statement, among others:

"When I took my plea on December the 18th, I was aware of the type of sentence that could be imposed. My attorneys and yourself, had both brought this to my attention. But only a week prior to my taking the plea, I had flatly rejected a 15-life offer from the Government. At the time I made my plea, my attorneys and myself had taken the following into consideration, in hopes that the Courts would impose a lesser sentence—The Government asked for no specific sentence—The Government and the Courts would be relieved of the task of a trial and the expense of a trial—that this being one of the older cases, under the old rules, I would be relieving the Court's Docket,—and that Your Honor would be relieved of the strain of sitting through a jury trial [at] a time when there was illness in her family. These factors had been taken into consideration in hopes of a lesser 'Sentence' or sentencing under a 'Young Adults Statute'. I only ask that my intentions at the time of my plea and this letter be taken into consideration, and that if at a later time I seek other forms of relief they be considered also. Once again, thank you."

Between the date of sentencing and the filing of the present motion, Mr. Bolden filed three motions regarding his sentence. On May 7, 1976, he filed a motion for reduction of sentence; on February 24, 1977, he filed a motion for reconsideration of sentence reduction; and on May 26, 1977, he filed a motion for correction of sentence. Each was filed *pro se*, each attempted to demonstrate that the defendant had worked hard during his imprisonment to rehabilitate himself and each pleaded for leniency in the form of a reduced sentence. Not once in any of these three pleadings is any mention made that the sentence imposed on the defendant was inconsistent with representations made to him before the plea regarding the sentence he would receive. Each of the motions was denied.

In the present motion, Mr. Bolden contends for the first time that he was the victim of ineffective assistance of counsel. In particular, he states in his motion:

"I plead (sic) guilty to 2nd degree murder on the advise of my counsel, because he stated that I would not receive the maximum. . . . He stated at most that I would receive ten (10) to thirty (30) years and my codefendant even less. Reasons: it was the holiday season and the Judge was in a good mood."

In its answer to defendant's present petition, the government cited relevant case law and pointed out that Mr. Bolden's contention, on its face, does not entitle him to relief or even to a hearing under 28 U.S.C. § 2255. The government's memorandum indicated that a petitioner had to allege that his counsel stated flatly that an agreement or understanding existed with the judge, and that a lawyer's mere estimate of the judge's likely decision was not sufficient to justify a hearing. In a response to this memorandum of law, Mr. Bolden then obligingly asserted, "I did not view the 10–30 year bargain brought to me by my attorney as a prediction. It was conveyed to me as a certainty providing I follow his (my attorney's) guidance. My attorney assured me that it was a fact that my sentence would not exceed 30 years. It way (sic) because of this and this only that I consented to enter a guilty plea."

## II.

The United States Court of Appeals for the District of Columbia Circuit, in *United States v. Simpson*, 141 U.S.App.D.C. 8, 436 F.2d 162 (1970), considered the case of a defendant who filed a § 2255 motion alleging that he had entered a plea of guilty upon counsel's statement that he had made "arrangements" with the judge which

would result in a certain sentence. The Court observed:

> A defendant cannot claim "coercion" undercutting a guilty plea merely because he has been advised by his attorney that e. g. the judge will probably be more lenient than a jury, or is normally more lenient with defendants who plead rather than go to trial. Nor is the guilty plea undermined by an allegation that he would obtain certain treatment, even if embellished by the defendant's addition that he had "presumed" that his attorney had in hand a promise or agreement on the part of the prosecutor or judge. However, an allegation of false advice from counsel of an outright arrangement with the judge crosses the line, and would constitute, if proved, impermissible verbal coercion. At 164.

However, the Court indicated that not every allegation of an "outright arrangement" would compel a hearing.

> To some extent, the need for evidentiary hearings on petitions filed under 28 U.S.C. § 2255, can be avoided or confined by reasonable limitations as to the threshold showing required to impose a hearing requirement. A distortion rather than furtherance of the interest of justice might well be the likely product of a rule that inexorably required evidentiary hearings, even if the allegations are "vague, conclusory, or palpably incredible." Id.

The logical conclusion from an examination of the transcript of the plea hearing is that defendant knew that he could receive the maximum sentence and that no flat representations were made that he could get less. Attorneys for Mr. Bolden's co-defendant explained in detail what the maximum sentence was and that the government, although not requesting a particular sentence, would allocute for a significant and meaningful sentence. Mr. Bolden's attorney adopted these representations for Bolden in his presence. The Court then asked Mr. Bolden whether his plea had been induced by any promises or representations by anyone as to what sentence would be imposed, and Mr. Bolden said it was not. The Court then asked whether he understood that he could be sentenced up to life imprisonment and defendant said that he did.

It is clear also from defendant's handwritten letter of February 2, 1976, that an opportunity outside the courtroom to reflect on what had transpired earlier in the day had not left him either outraged or particularly surprised at the Court's sentence. Moreover, in the three different *pro se* motions he filed after the date of sentencing seeking reduction of sentence as a matter of leniency, he said nothing which even suggested that his sentence was inconsistent with promises or representations made to him. Finally, the allegations in Mr. Bolden's § 2255 motion, presently before this Court, are inadequate on their face to justify a hearing. Only after Mr. Bolden received the benefit of the government's convenient memorandum of law did he produce allegations sufficient in theory to merit a hearing.

This Court is mindful of the directive of the Court of Appeals to the effect that a hearing on a § 2255 motion need not be granted if the allegations therein are "vague, conclusory, or palpably incredible", *Simpson, supra*, and concludes that the allegations in defendant's response to the government's memorandum of law are indeed conclusory and palpably incredible. A court should not countenance a petitioner's attempt to remedy a fatally defective complaint after he has consulted an answer which identifies the fatal defect. Any other rule, even with regard to *pro se* petitions, would guarantee that the district courts would have no opportunity to separate the great mass of complaints having some possibility of merit from the small number which fail to satisfy the very modest tests of sufficiency set forth by federal procedure for complaints in general and by the United States Court of Appeals for § 2255 petitions in particular.